**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **RYCON SPECIALTY FOODS, INC.,** | : | **CIVIL NO. 1:09-CV-2092** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WELLSHIRE FARMS, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Statement of Facts and of the Case

This case, which comes before the Court on a motion to compel discovery filed by the Defendant, underscores how matters which begin simply can, on occasion, become complex.

This case began as a simple collections action. On October 27, 2009, RyCon initiated this civil action by filing a complaint against Wellshire, which sought to collect the sum of $229,584.53 on invoices allegedly owed to RyCon by Wellshire. (Doc. 1.) According to the complaint, RyCon, a Pennsylvania corporation, contracted with Wellshire, a New Jersey firm, to distribute "hormone free cheese products" produced by RyCon. (Id.) As described in RyCon's complaint, this business

arrangement was simple: RyCon sold products to Wellshire, which were then sold in turn by Wellshire to others. (<u>Id.</u> ¶10.) Rycon would issue invoices to Wellshire for goods sold to Wellshire, invoices which Wellshire was to pay within 14 days of receipt. (<u>Id.</u>, ¶¶ 11-12.) After describing this straightforward, pedestrian business relationship, Rycon's complaint alleged that between July and September, 2009, Wellshire failed to pay a series of invoices, and now owed Rycon $229,584.53, and amount owed that RyCon claimed was undisputed. (<u>Id.</u>, ¶¶ 13-34.)

From this simple beginning, this litigation swiftly became more complex when, on February 17, 2010, Wellshire filed an Answer with Affirmative Defenses and Counterclaims of Breach of Contract, Wrongful Interference with Business Relations, Misrepresentation, and Unjust Enrichment. (Doc. 10.) This array of counterclaims was premised on Wellshire's assertion that RyCon had breached an agreement, albeit an oral or implied agreement, between the parties arising out of a business relationship commenced in or about 2001. According to Wellshire, under the terms of this agreement, Wellshire served as the exclusive and master distributor of all of RyCon's hormone free cheese products. Posturing itself as RyCon's "exclusive and master" distributor, Wellshire alleged that RyCon had violated this agreement, and committed tortious acts by selling hormone free cheese to others without channeling those sales through Wellshire.

While Wellshire leveled these substantial counterclaims against RyCon, in connection with this motion to compel, Wellshire candidly admits that its counterclaims rest on what is, factually, a thin reed. Wellshire does not allege the existence of any written agreement between the parties designating it as the "exclusive and master" distributor of RyCon hormone free cheese products. Instead, Wellshire variously characterizes its alleged exclusive and master dealership agreement with RyCon as an oral, or implied-in-fact, contract.

Having advanced this counterclaim premised on an oral, implied-in-fact, yet exclusive, agreement between the parties, Wellshire then propounded the discovery demands which form the basis of this motion to compel. Specifically, Wellshire seeks an order compelling RyCon to fully respond to Wellshire's Interrogatories numbers 12, 13, 14 and 16, and Requests for Production numbers 3 through 13, 19 through 21, and 23. These discovery demands seek the following detailed information from RyCon as part of Wellshire's effort to document damages arising from the breach of an alleged oral, implied-in-fact contractual relationship between the parties:

A. INTERROGATORIES

12. Identify all documents that evidence the business relationship between you and Wellshire for the distribution of RyCon products.

13. Identify all your vendors, producers, slicers, packers, shipping companies, storage and

3

distribution facilities, and customers from January 1, 2003 to present, including names, addresses, contact persons, phone numbers and email addresses.

14. Identify all sales representatives and brokers you have used for distribution and sale of your product from January 1,2003 to present, including names, addresses, contact persons, phone numbers and email addresses.

16. Identify any and all banks and other financial institutions or individuals to whom you submitted a loan application for the period of January 1, 2003 to present.

B. REQUESTS FOR PRODUCTION

3. Any and all documents which embody, evidence, relate to or pertain to the names, addresses, and phone numbers for the customers of RyCon products from January 1, 2003 to present.

4. Any and all documents which embody, evidence, relate to or pertain to the names, addresses, and phone numbers of all vendors with whom you did business for supplying, slicing, packing, storing, and shipping cheese from January 1, 2003 to present.

5. Any and all documents which embody, evidence, relate to or pertain to agreements, whether written or oral, that you have had or currently have with cheese vendors, producers, slicers, packers, shipping companies, storage and distribution facilities, and customers, for RyCon products from January 1, 2003 to present.

6. Any and all documents which embody, evidence, relate to or pertain to pricing to your customers, as well as price changes for your customers, from January 1, 2003 to present.

7. Any and all documents which embody, evidence, relate to or pertain to bills or invoices to RyCon from all vendors with whom you did business for supplying, slicing, packing, storing, and shipping cheese from January 1,2003 to present.

8. Any and all documents which embody, evidence, relate to or pertain to your costs in producing, slicing, packing, storing, and shipping, and otherwise distributing RyCon products.

9. Any and all documents which embody, evidence, relate to or pertain to the names, addresses, and phone numbers of all your sales representatives and brokers for RyCon products from January 1,2003 to present.

10. Any and all documents which embody, evidence, relate to or pertain to the agreements, whether written or oral, with sales representatives and brokers, from January 1,2003 to present.

11. Any and all documents which embody, evidence, relate to or pertain to the commissions, fees or other compensation paid by RyCon to sales representatives and brokers from January 1, 2003 to present.

12. Any and all documents which embody, evidence, relate to or pertain to the invoices RyCon transmitted to customers of your products, together with any and all adjustments and credits to those invoices, from January 1, 2003 to present.

13. A copy of, and any and all documents which embody, evidence, relate to or pertain to, RyCon's federal, state and local tax returns for all taxing authorities to which you filed a return, paid or owe taxes from January 1, 2003 to present.

19. Any and all documents which embody, evidence, relate to or pertain to the manner in which profit on the sales of RyCon products were to be split between Wellshire and RyCon.

20. Any and all documents which embody, evidence, relate to or pertain to the manner in which RyCon financed the start-up of its operations from the period from commencement of its operations to the present.

21. Any and all loan applications with accompanying documents submitted to any and all banks and other financial institutions or individuals for the period of January I, 2003 to present.

23. Any and all documents which embody, evidence, relate to or pertain to RyCon's pricing to Wellshire and all modifications to that pricing for the period of January 1, 2003 to present.

For its part, RyCon opposes these far-ranging discovery requests. (Docs. 29 and 30.) Noting that, with the dissolution of their prior business dealings, RyCon and Wellshire are now competitors in the hormone free cheese distribution industry, RyCon voices two fundamental objections to Wellshire's motion to compel. First, RyCon asserts that Wellshire's discovery demands, which are sought in connection with Wellshire's counterclaim that an oral, implied-in-fact, but "exclusive and

master" distributorship agreement existed between the parties is simply too speculative to support wide-ranging discovery, like that propounded by the Defendants. In addition, RyCon insists that much of the discovery propounded by Wellshire seeks confidential, proprietary trade information relating to financing, marketing, pricing, and distribution of products. In RyCon's view this proprietary information is privileged, and, therefore, should not be the subject of compelled disclosure to Wellshire, a competitor with RyCon in this trade. (Id.)

The contrasting positions of the parties on this discovery dispute have been fully briefed, (Docs. 27-31), and are, therefore, ripe for resolution. For the reasons set forth below, Wellshire's motion to compel will be granted, in part, solely with respect to those discovery requests which seek records relating to the direct business dealings between these parties. In all other respects, the motion to compel will be denied.

## II.   <u>Discussion</u>

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

(a) Motion for an Order Compelling Disclosure or Discovery

(1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

F.R. Civ. P. Rule 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

F.R.Civ.P., Rule 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus,

a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In this case RyCon's objections to Wellshire's discovery demands, and this motion to compel, speak directly to these two cardinal considerations in any discovery dispute: questions of the scope of relevance and the reach of various privileges. We will, therefore, consider each of these RyCon objections, in turn.

At the outset, RyCon objects to these discovery requests in their totality on relevance grounds, arguing that Wellshire's claim of an oral, implied-in-fact, but exclusive master distributorship agreement is so thinly supported and speculative that

it cannot legitimately form the basis for far-reaching discovery demands. RyCon is certainly correct that Wellshire must ultimately make an exacting showing if it is to sustain a claim that it had an "exclusive and master" distributor agreement with RyCon based upon oral understandings or some implied agreement arising from the conduct of the parties. As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000). In this case, under Pennsylvania law, agreements must satisfy the following three requirements to be enforceable: (1) both parties must manifest an intent to be bound by the terms of the agreement; (2) the terms must be sufficiently definite to be enforceable; and (3) the agreement must be supported by consideration. ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998) (internal citations omitted). In making this determination, the pivotal inquiry is whether the parties "manifested an intention to be bound by [the agreement's] terms and whether the terms are sufficiently definite to be specifically enforced." ATACS Corp., 155 F.3d at 665(internal citations omitted). Thus, in order to form a contract there must be an offer, acceptance, consideration, or mutual meeting of the minds. Aircraft Guaranty Corp. v. Stro-Lift, Inc., 103 F. Supp. 2d 830, 835-36 (E.D. Pa. 2000) (citing Jenkins v. County of Schuylkill, 658 A.2d 380,383 (Pa. Super. Ct. 1995). "A 'meeting of the

minds' occurs when both parties mutually assent to the same thing, as evidenced by an offer and acceptance." Id. (citing Management Systems, Inc. v. Consolidated Recycling and Transfer Systems, Inc., 617 A.2d 1140, 1146 (Pa. Super. Ct. 1996).

Under Pennsylvania law, the same basic principles governing the interpretation of contracts apply with equal force to written and oral agreements. Thus, when applying Pennsylvania law:

> To establish that it had an oral contract [a party] must show that: 1) both parties manifested an intention to be bound by the terms of the agreement; 2) the terms of the agreement were sufficiently definite to be specifically enforced; and 3) there was mutuality of consideration. Redick v. Kraft, Inc., 745 F.Supp. 296, 300 (E.D.Pa.1990) (applying Pennsylvania law). The requirement of consideration is satisfied if there was a benefit conferred on the promisor or a detriment to the promisee and "an act, forbearance or return promise bargained for and given in exchange for the original promise." Channel Home Centers, Grace Retail v. Grossman, 795 F.2d 291, 299 (3d Cir.1986). [Furthermore], "The existence and terms of an oral contract must be established by clear and precise evidence." Redick, supra, 745 F.Supp. at 300. Whether a contract exists is a factual issue for the trier of fact to determine unless there is no genuine issue of material fact.

York Excavating Co., Inc. v. Employers Ins. of Wausau,  834 F.Supp. 733, 740 (M.D.Pa. 1993).

In determining whether the parties "manifested an intention to be bound by [an agreement's] terms and whether the terms are sufficiently definite to be specifically

enforced," <u>ATACS Corp.</u>, 155 F.3d at 665(internal citations omitted),  Pennsylvania courts agree that "[a]n agreement to agree is incapable of enforcement." <u>Highland Sewer and Water Auth. v. Forest Hills Municipal Auth.</u>, 797 A.2d 385, 390 (Pa. Commw. Ct. 2002). Thus, the mere statement of an aspirational goal to reach some future agreement is not an enforceable contract in Pennsylvania. <u>Channel Home Centers v. Grossman</u>, 795 F.2d 291,  298 (3d Cir. 1986).

Yet, while these basic principles defining a contract under Pennsylvania law remain constant, the burdens a party, like Wellshire, faces when asserting the existence of a contract based upon some informal, or oral, understanding are substantial. In all such instances, "'The existence and terms of an oral contract must be established *by clear and precise evidence*.'"  <u>York Excavating Co., Inc. v. Employers Ins. of Wausau</u>,  834 F.Supp. at 740 (citations omitted, emphasis added). Given the exacting benchmarks that Wellshire must meet to prove the existence of the detailed, exclusive and master distributorship agreement with RyCon based solely on oral or implied proof, RyCon may well be justified in questioning whether, at the end of the day, Wellshire can carry its burden of proving " 'The existence and terms of an oral contract . . .  by clear and precise evidence'" <u>York Excavating Co., Inc. v. Employers Ins. of Wausau</u>,  834 F.Supp. at 740.

However, we are not at the end of the day. We are in the midst of discovery. In this setting, we are cautioned that a party like Wellshire does not have to prove a *prima facie* case[1] to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence; rather, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Here, judged against these standards, we find that RyCon's skepticism regarding the ability of Wellshire to prove the existence of this oral or implied agreement by clear and precise evidence does not provide grounds for the wholesale denial of this motion to compel. However, these concerns, coupled with RyCon's well-founded assertion that much of the information sought by Wellshire in these discovery demands is confidential proprietary information which is protected from disclosure, leads us to conclude that many of these specific discovery items are "of

---

[1]Because we find that Wellshire does not have to establish a *prima facie* case in order to seek discovery, we are declining Wellshire's proposal to have an evidentiary hearing in this matter for the purpose of making such a *prima facie* case.

such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Id.

At the outset, we conclude that Wellshire is entitled to limited discovery of matters directly relating to its business dealings with RyCon since this specific discovery "appears reasonably calculated to lead to the discovery of admissible evidence," in that this discovery tends to shed light on the issue of whether Wellshire can prove what it has alleged–the existence of a longstanding, specific, detailed, structured, exclusive and master distributorship agreement which was wholly oral or implied in nature. In our view three of the contested discovery demands are tailored towards revealing evidence pertaining to this issue, a factual issue that constitutes the crux of Wellshire's counterclaim. These discovery demands are interrogatory number 12, which requests that RyCon:

> Identify all documents that evidence the business
> relationship between you and Wellshire for the
> distribution of RyCon products.

and requests for production of documents 19 and 23 which call for the production of the following classes of documents:

> Any and all documents which embody, evidence,
> relate to or pertain to the manner in which profit on the
> sales of RyCon products were to be split between
> Wellshire and RyCon.

> Any and all documents which embody, evidence,
> relate to or pertain to RyCon's pricing to Wellshire
> and all modifications to that pricing for the period of
> January 1, 2003 to present.

In our view, discovery of these specific classes of information is appropriate since these records may lead to the discovery of admissible evidence on one of the central and disputed factual issues in this litigation–whether an implied, but longstanding, exclusive and highly structured marketing agreement existed between these parties.

As for the balance of Wellshire's requests, however, we conclude that this motion to compel should be denied, both because the requested items are "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure," In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009), and because the discovery requests call for the disclosure of sensitive proprietary trade secrets and confidential information. Fairly construed, the balance of Wellshire's discovery requests do not seek information calculated to confirm the existence of an oral or implied agreement between the parties in this litigation. Indeed, these requests do not ask for any information whatsoever pertaining to the business relationship between these parties. Instead, these requests make global, multi-faceted, specific, and detailed demands upon RyCon for information concerning that firm's marketing strategies, customer lists, vendor networks, pricing policies, sales programs, corporate logistics, and

internal corporate financing. RyCon objects to this wide-ranging discovery, which calls upon it to reveal to a potential competitor the details of its business operating plans, marketing strategies, sales and distribution plans. RyCon's objections are twofold. RyCon first argues that this information is of marginal relevance, but also asserts that this requested data is confidential, proprietary, sensitive business information which privileged from disclosure.

RyCon is correct in noting that these trade secret concerns are entitled to legal protection. In fact, the Federal Rules of Civil Procedure expressly recognize that this type of trade information may be protected from disclosure and specifically authorize courts to enter orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed. . . . " Fed. R. Civ. P. 26(c)(1)(G).The paradigm for assessing requests for compelled disclosure of trade secret information involves a straightforward assessment of the competing interests of the parties. In this setting:

> The courts have developed a balancing test for discovery of information that one party claims would result in undue harassment, oppression, or embarrassment. This test requires the trial judge to weigh the interests of both parties in deciding whether or not to protect the information. A three pronged test has developed in regards to trade secrets. For a protective order to be granted, a party must show that the information is confidential and that the disclosure would be harmful. The burden then shifts to the party seeking disclosure to show that the information sought is relevant and necessary at this point in the litigation. Centurion

16

Industries, Inc. v. Warren Steurer and Associates, 665 F.2d 323 (10th Cir.1981); Empire of Carolina v. Mackle, 108 F.R.D. 323 (S.D.Fla.1985).

Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering and Const. Co., Inc., 153 F.R.D. 686, 688 (M.D.Fla. 1994). See also Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 528 (D. Del. 2002).  Applying this paradigm we find at the outset that, as the party resisting disclosure, RyCon has carried its threshold burden of proving both "that the information is confidential and that the disclosure would be harmful." Id.

Indeed, it is clear beyond any serious dispute that the type of proprietary trade information sought by Wellshire from RyCon is precisely the kind of data traditionally entitled to trade secret protection. These categories of protected trade secrets in highly competitive markets include "highly confidential financial and sales information, marketing plans, marketing reports, advertising information and expenditures, as well as other types of internal memoranda and reports."Mannington Mills, Inc. v. Armstrong World Indus., Inc, 206 F.R.D. 525, 530 (D. Del.2002). This trade secret protection also embraces customer lists, Pepsico, Inc. V. Redmond, 54 F.3d 1262, 1270 (7th Cir. 1995); "lists, which include the names, addresses and telephone numbers of key contacts, pricing information, purchase histories and the unique needs and special requirements of each customer," Air Prods. and Chem., Inc.

17

v. Inter-Chemical Ltd., No. 03-6140, 2003 WL 22917491, 10 (E.D.Pa Dec. 2, 2003);

as well as all manner of confidential pricing and marketing data, Bimbo Bakeries

USA, Inc. V. Botticella, No. 10-194, 2010 WL 5771774 (E.D. Pa. Feb. 9, 2010). See

also Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1233-34 (11th Cir. 2009)

(finding "pricing information...and information about Proudfoot's products" to be

"valuable confidential business information"); Zyprexa Litig., 474 F. Supp. 2d 385,

404 (E.D.N.Y. 2007) (explaining confidential/trade secret information to include

"confidential preliminary research, development ideas, commercial information,

product planning").

Furthermore, we find that RyCon has shown that the wholesale disclosure of

this broad array of sensitive proprietary business information to Wellshire, a rival in

a competitive marketplace, would be harmful. In this regard, we acknowledge the

economic truth accepted by courts that have confronted similar discovery demands

in the past; namely, that: " '[I]t would be divorced from reality to believe that either

party here would serve as the champion of its competitor ... to maintain the

confidentiality designation or to limit public disclosure . . . .' Micro Motion, 894 F.2d

at 1325. Moreover, courts have traditionally recognized that disclosure to a

competitor is more harmful than disclosure to a noncompetitor. American Standard,

828 F.2d at 741, relying on Coca-Cola Bottling Co. v. Coca-Cola Co., 107 F.R.D.288,

293, 299 (D.Del.1985). Therefore, potential harm exists for [one party] resulting from disclosure of the [trade secret] information demanded by [a business competitor]." Mannington Mills, Inc. v. Armstrong World Industries, Inc., 206 F.R.D. 525, 530-531 (D.Del. 2002).

Having found that RyCon has carried its threshold burden of proof justifying protection of this confidential business information from disclosure to its competitor Wellshire, we further conclude that Wellshire has not met countervailing burden "to establish that disclosure of trade secrets and confidential information is *relevant and necessary to its case*." Id. at 528 (citations omitted, emphasis added). There are two component parts to this showing: Wellshire must demonstrate both relevance and current necessity for access to these trade secrets. With respect to the issue of relevance of this disclosure, at the outset we note that this wide-ranging information has no relevance to the crucial threshold issue in this litigation–whether RyCon and Wellshire enjoyed an exclusive, structured and well-defined, albeit implied, business partnership. Furthermore, given the substantial legal obstacles that Wellshire may face in establishing by clear and precise evidence the existence of such a detailed, but implicit, contract between the parties, we find that this additional discovery which Wellshire contends only goes to measuring damages has only a marginal relevance at this time.

But even if we concede that there may be some limited relevance to this evidence if Wellshire carries its burden of proving the existence of an oral or implied contract, Wellshire still must show that disclosure of RyCon's trade secrets is "necessary to its case." Id. at 528 (citations omitted). In this instance we find that Wellshire has not shown the current necessity of the particularly invasive form of discovery.  Moreover, we believe that Wellshire may not be able to show necessity for these particular disclosures. To the extent that the principal measure of damages on Wellshire's counterclaim entails an assessment the volume of RyCon sales made without the participation of Wellshire at a time when Wellshire believed that it had an implied agreement to serve as the "exclusive and master" distributor for RyCon, we find that the information needed to document these damages could be obtained through far less intrusive discovery demands seeking overall sales data from RyCon. Therefore, since Wellshire has not shown that the wholesale release of trade secret information by RyCon is necessary to the proof of this element of damages, its motion to compel production of this information must fail. Finally, to the extent that Wellshire requests access to these trade secrets to support a claim for damages based upon some alleged overcharges by RyCon at undefined times, in violation of the terms of  a contract which has no written terms but is only implied-in-fact, we find that this damage claim is simply too tenuous to overcome the trade secret privilege.

### III.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the Defendant's motion to compel (Doc. 27), is GRANTED in part and DENIED in part as follows: The Plaintiff shall respond to Defendant's interrogatory number 12 and requests for production 19 and 23.   In all other respects the motion to compel is DENIED.

So ordered this 6th day of April, 2011.


<u>**S/Martin C. Carlson**</u>
Martin C. Carlson
United States Magistrate Judge

21